May it please the court, I'm Tim Zendell representing Mr. Munoz, is his true name, the case is under Munoz, however. And I'd like to reserve two minutes of my argument. Very good. Your Honors, I'm not asking to make any new law here. This is... Could you raise your microphone a little bit? Thank you. I'm sorry. I'm asking to correct a simple and straightforward error regarding a third item that was deemed to be a firearm, despite the government presenting evidence that it was not a firearm, and that was deemed to have been possessed by Mr. Munoz under a state law that simply did not outlaw the possession of this item. Well, it outlawed it, if it was operable. Well... If it was operable, it's a firearm, and it would have been outlawed because your guy's a felon. Right? If that had been the evidence, I think that that government would have had a better argument. No, no, no. If your client, who's a convicted felon, had an operable firearm, however it was manufactured under state law, he would have been in violation of law. Correct. I don't think I agree with you. Why not? Because the definition under state law required it to be completed. That's what I'm saying. If you're saying it's completed... Yes. And it's operable. Then I will agree. Okay. All right. Go ahead. But the problem was that the state law and the federal law were in lockstep. What we have now, what I'd like to do is respond to the government's Rule 28 letter of the other day. It's basically trying to resurrect an argument that the government expressly waived at sentencing of Mr. Nunez, which is that his possession of this firearm violated California Penal Code Section 29800. The government was asked that question by the district court, and this was after presenting evidence at trial that this item was not a firearm, specifically the testimony of Sergeant Johnson, who testified at trial that this was not a firearm under the existing state law. Well, he testified, as I understand it, that it isn't a firearm when it comes unassembled, but it can be made into a firearm. That's what I understood the testimony to be. He said it was not a firearm when it was made or when it was transferred. Right. But we don't – I mean, my issue is that there appears to be no evidence that he assembled it or that he owned it, distinct from possessing it, or that given the state that it was in when it was found, what it could do. Right. I agree with you, Your Honor. I don't think that that – I think that that was a problem. But we did know that. But I don't see why that isn't the same problem under 29800 as it is under the other statute because it still has to be a firearm. I agree with you. The district judge, I think he got tricked by the argument. But so what difference does it make whether they are under 800 or they're not under 800? It doesn't. The government failed to prove that it was a firearm under the definition, which would be the same for 29180 and 29800. And I had one other question. 29180 was amended. Which version should apply here? There's a 2022 version and there's an older version. We used the version that was in force in November of 2021 at sentencing that would have been prior to any amendment. I don't know the nature of the amendment. It added a requirement that a person who has a firearm that doesn't have a valid serial number, that makes it additionally problematic. Well, we would apply the law that was in effect at the time of sentencing, which would have been November of 2021. I hate to do this to you, but I can't help myself. So at sentencing, the government only had to – or the court only had to find that this was a firearm by the preponderance of the evidence, correct? I think it's fair, yes. Okay. And so your guy had two guns that were real guns, according to you. At least one was loaded and a whole bunch of ammunition, and one that looked like it was fully assembled, but the plastic part was melted. It was melted and there was no – And so what would your guy be doing with one of these if it was not a gun? Well, there were a number of possible explanations. It was in a different spot from the other two. The other two were in a bag together. This one was just lying loose in a burned car seat. Next to him. There's no evidence about how it came to be there. He was in the driver's seat. Right. But by the time the car – the car had basically been – Burned up, yeah. So everything had fallen down. So the other significant fact was there was no clip in the gun. There was nothing to show that the gun had been operable. And that evidence came in through Sergeant Johnson, who was the officer who did the stop and did the investigation. Excuse me for interrupting. If there had been evidence that the object was completed as a firearm and capable of expelling a projectile, then the absence of the clip wouldn't matter, would it? I mean, you're saying it implies that maybe it was not completed. But if we knew that it was completed, the fact that the magazine wasn't in it wouldn't help. I think that would change the analysis. Okay. I agree. But the problem is that that's not the state of the evidence. And the court specifically addressed that question twice at ER 24. He says, the next question that I don't want to overlook is the one I asked, and he had asked it a few minutes before that. Under Penal Code Section 29800, is this a firearm? The government's answer was, I am not well-versed enough to know. This was where a person in our office who knows guns better than I do says, this is how those guns are treated in the state system, referring to the other Section 29180. So my sense is there must be some problem with applying a felon in possession state statute to ghost guns. I don't know the answer as to why. And the district judge then referred to Sergeant Johnson's testimony and declined to make a finding that it was a firearm. We had the expert here in court during trial. He said, and the government agreed, I know, and referred an AUSA to an AUSA that he also spoke to, and the court said he didn't know either. I thought he knew everything. And the government said, none of us do, but this is how these guns are prosecuted in state court, these ghost guns. I can't answer to the court. I'm curious why. There must be something. And I think I identified what that something was in the reply brief, which is that it wasn't until earlier this year that the state amended its definition of firearms to include uncompleted frames and receivers. And the court concluded, he said, they had a very emphatic understanding about what constituted a firearm. It seemed to be his expertise, his specialty. And so if he didn't say it wasn't a firearm under state law, and I think he meant it was, there must be some reason. So I'm not going to make that leap. Can I ask you about that? Because you said something in response to one of Judge Graber's questions that confused me. I thought that there was a different definition of firearm for the 29-180 statute as opposed to the 29-800. Am I getting the numbers right? The two statutes that we're contending with. I thought there were different definitions of firearm for those two, and you said, no, it's the same. No, I don't believe there are. There was a different definition as to the manufacturer of firearms that preceded the 2022 amendment. I think that both 29-180 and 29-800 use that same definition, which until earlier this year, I think effective July 1st, did not include the incompleted frames. I thought the whole reason the government shifted from 29-800 to the other statute was precisely because it couldn't satisfy the definition of firearm under 29-800, and so it turned to this alternative statute, which had a somewhat broader definition. Am I getting that wrong? No, I think the reason that he did that was because they ultimately realized that 29-180 did not prohibit the possession. Right. It's ownership, manufacturer, or assembly. They would have had to prove one of those three things under 180. For it to be unlawful, for it to be criminal, they would have to prove that it was sold. So possession is not enough. So the definition that I was looking at is found in Section 16520, and it talks about as used in this part. So that part, does that include both 29-800 and the other one, 29-180? Yes, I believe that it does. It's not a different definition. So I think, answering your question, Judge Watford, I think the government ultimately realized that they have a problem with 29-180. 29-180 requires these kinds of unfinished firearms, these polymer 80s, to be serialized. There's a grace period that expires January 1st of 2024. We haven't reached that. Now, in the interim, both, as I mentioned in my brief, both the ATF and the California State Legislature have acted to bring these kinds of things, to bring these kinds of items into the definition of firearm. But we're talking about a case that was sentenced in November 2021. And so, like I said, I'm not looking to make any new law here or carve any new pathway. There was an error made in Mr. Nunez's sentencing, and I believe this court should remand the case to the district court to have him sentenced without that two-level objection. Okay. Let's hear from the government. We'll give you some time for rebuttal. May it please the court. Justin Lee on behalf of the United States. To first answer your question, Judge Watford, the definition of a firearm under 29-800, the felon in possession statute, is identical to the definition of a firearm under 29-180C. Those are identical, and they both come from California Penal Code 16-520. That's the definition of a firearm. And with regard to 16-520, do we have to apply the definition that was in effect at the time of sentencing when determining whether the district court was right or wrong? Yes, Your Honor. And that definition of a firearm was the same in 2020 when the defendant possessed it. It was the same in 2021 when he was sentenced. And it's the same today. That definition has not changed. Judge Graber, you asked earlier about the law that was in effect with respect to 29-180C. That was SB 746 was the operative change in law that had gone into effect in 2018. That allowed a grace period, and that grace period expired on January 1, 2019. The reference to a grace period in 2024 that is raised in the reply brief comes from AB 1621, which went into effect in July of 2022. You know, I think there was an amendment to 16-520 because it now includes both a completed frame or receiver or a firearm precursor part. I don't think that part of the definition was in the earlier version. That's correct, Your Honor. That portion was not there, but that portion does not aid the court's consideration today because the operative definition of a weapon designed to expel a projectile by action of an explosive, that part hasn't changed. Well, tell us. I'm struggling to see how we would affirm the sentence here. So just first out of the box, what's your position? Your strongest argument for affirming is what exactly? The strongest argument for affirming is that the district court got it right in the finding that it was a firearm.  Fine, that's fine. Now we shift to whether it was unlawfully possessed under state law. That's correct, Your Honor. And which statute? Just give us the argument. The best argument, Your Honor, is 29-800, the Felon Possession Statute. It applies to all felons in California. Undisputed, the defendant's a felon. He admitted that in his stipulation. Yeah, the problem is whether it's a firearm. We have this sort of melted-down mess with no clip in it. And as I saw, there was no testimony that it was completed and capable of firing a projectile. Where's the evidence specifically saying that this was a firearm other than it looked like it might have been? Judge Graber, you're correct that there's nothing, there's no testimony that said we put a round of ammunition into that firearm and pulled the trigger. Well, they couldn't. Or even just, you know, my expertise tells me that looking at it, it's capable of doing that. There's nothing like that. That's correct, Your Honor. However, Sergeant Johnson's testimony at Excerpt 46 through 53 was referring to it as a handgun, as a firearm, as a gun. There was no testimony that this thing was anything other than a gun. But that's a legal conclusion, isn't it? Or at least a conclusory factual statement that, you know, doesn't seem to be supported by what evidence there actually was about the object. Your Honor, I disagree that there's not sufficient evidence that this item that was possessed by the defendant was a firearm. The jury found that the two other guns supported a guilty verdict. Inherent in that jury finding is that there were two firearms and they met the definition of a firearm. Sergeant Johnson's testimony was consistent as to all three firearms. Well, but all three weren't alike. You know, if this had been an ordinary weapon, then the logic of what you're saying makes sense. But I don't see the jury having made a finding specifically with respect to this item. No, Your Honor. The jury was not asked to make a finding as to this item. The district court did make a finding as to this item. That's at Excerpt 30. And the district court specifically raised the issue at the sentencing hearing at Excerpt 20 and said, The government's brief says it's undisputed that the ghost gun is a firearm. The defense did not object to that characterization. And the record supports that it was a finding, that it was a firearm. So, counsel, let me ask you your response to the idea that you're now relying on 29-800 because 29-180 doesn't apply because, again, I saw no evidence of the defendant assembling it, owning it, or manufacturing it as distinct from possessing it. Your Honor, I disagree. The United States is relying on both 29-800 and 29-180C. Well, okay. How do we know that there was ownership? The district court made that finding at Excerpt of Record 26. Based on what? Based on possession. That's correct, Your Honor. But possession, he could have stolen it. I mean, he's, you know, not a law-abiding character, obviously, with due respect. But so maybe he picked it up off the street or stole it from somebody. Why is there ownership? The defendant's possession of the item in his car with two other firearms that he was in possession of, and the finding by the district court that that is ownership is not clear air. Moreover, the fact that the firearm and the ammunition related to that firearm were segregated, that possession of the loaded 14-round magazine in the defendant's backpack goes to whether or not that firearm was owned and controlled and possessed by that defendant and is not something that he recently came into contact, and also as to it being a firearm because having a loaded magazine does not make sense if it is something other than a firearm. It's not a toy. It is not some firearm part. A loaded magazine that only works with that particular firearm of the three in the vehicle supports the finding that it is, in fact, a firearm. So there was a loaded magazine that fit this plastic gun. Is that what you're saying? There was, Your Honor. Oh. And could it have fit either of the other firearms? No, Your Honor. That was explicitly discussed at trial transcript page 136 that this magazine that was loaded with 14 rounds of ammunition only fit in the polymer 80 firearm. It would not fit in the other two firearms. So let me ask you again. We got sidetracked, I think. Did the government give up the opportunity to rely on 29-800? No, Your Honor. The United States in its sentencing papers had relied on 29-180C. The district court's sua sponte at the sentencing hearing raised the applicability of 29-800. The prosecutor did not know in that moment the response to that and directed the court back to 29-180C rather than relying on something that the prosecutor was unsure of the applicability. The other issue with 29-180C is that it, at least the version I have in front of me, but I want you to tell me if I'm looking at the wrong version. The version, as I understand it, that was in effect at the time of sentencing and said by January 1st, 2019, any person who, comma, as of July 1st, 2018, owns a firearm, blah, blah, blah. I think this would require proof that not only was the defendant the owner of the firearm in question, but that he owned it as of July 1st, 2018, and I didn't see any evidence of a point in time at which he acquired ownership. That's correct, Your Honor. There's no evidence in the record about the time that the defendant came into possession of that firearm. But then the statute wasn't violated, or at least you didn't prove that it was violated, right? No, Your Honor. I disagree with that. That statute authorized a grace period because people had been manufacturing firearms in the state of California, and this was a new law that had just gone into effect, so they were giving a grace period for people that had previously owned them. Right. So let's just back up and start with the statute's language again. By January 1st, 2019, so that's the grace period, any person who, as of July 1st, 2018, owns a firearm. So you have to have been the owner as of July 1st, 2018, so you just admitted that there was no proof that this defendant was the owner of this firearm as of July 1st. Your Honor, I disagree that 29180C only applies to an owner of the firearm at that time. 29180C outlaws the possession of an unserialized firearm, period. Do you have the statute in front of you? I just read it to you. It says any person who, as of July 1st, 2018, owns, blah, blah, blah. What is the other meaning of that besides you have to have been the owner as of that date, sir? I think when it is read in conjunction with the rest of that statute, because prior to 2018, you could lawfully manufacture a firearm in California and not serialize it. After that law went into effect, using 29180D, it was unlawful to manufacture. So any firearm that came into being in the state of California had to be serialized. And 29180C makes it a misdemeanor per firearm in that penalty provision in subsection G where any firearm that is unserialized would qualify. Okay. I think the statute was defectively drafted, unfortunately, and they fixed it in the version now. But I think you're just stuck with this awkwardly drafted provision that just doesn't fit these facts. Can I just ask you to follow up on Judge Graper's question? I don't understand how you preserved the 29800 argument, given that you were explicitly given an opportunity by the district court to put on proof to satisfy it. I think far from just sort of redirecting the court's attention to another statute, I think youróI don't know if it was you or your colleague in the officeóaffirmatively said, no, we're not in a position to show that that statute was satisfied, and that's why we're not asking you to make a finding under that statute, and please look at this other statute. So it seems to me whatever opportunity the government had to show that the terms of that statute were satisfied was just intentionally forfeited. Notwithstanding the court's accurate representation of what happened at the sentencing hearing, this court under Allen can still affirm for anything that is supported by the record, and a finding that the defendant possessed it in violation of 29800 is supported by the record. Is that true in a criminal sentencing context? Your Honor, I don't have a direct Ninth Circuit case on the court. I mean, we apply that all the time in civil cases, but maybe I'm just not thinking of the cases themselves, but I wonder about that. Your Honor, the Gill case that is cited in the government's 28J letter is outside the circuit, but that exact circumstance happened that that had not been relied upon by the government, and the court found that it was supported by the record after the case got up on appeal. If there are no further questions, I see I'm over my time. Okay. Thanks very much. Let's put two minutes on the clock for rebuttal if you have anything you'd like to say. Four things. First, Judge Battalion, I don't agree with the government's assessment that that clip only fit the Polymer 80. It was a 9-millimeter clip. It was found in the bag with the other two serialized firearms that were the subject of the indictment. Both of those were also 9-millimeter handguns. All right. But you don't think there was any testimony that that particular magazine or clip fit only in the Polymer gun? Not that it fit only in the Polymer gun. Or was there any testimony that the clip could have fit in any of the three firearms? There wasn't evidence. Okay. Either way. Either way. There wasn't evidence that the other buddy was with the other. I hate to take up your time, but the evidence is that one was loaded in the bag, right? And another one was not loaded in the bag. Is that right? It had a clip, but it was an empty clip. Okay. So you got a third clip. A third clip. Okay. But all three firearms were 9-millimeter. They're all 9-millimeter. The second is the government has been arguing, I think they argued that the court should review this for plain error. The objection that made on Mr. Nunez's behalf at sentencing was to application of the 2K2 number of firearms adjustment. That put all the questions at issue, whether it was a firearm and whether he unlawfully possessed it. That's how the district court understood it. That's how we discussed it at sentencing. So I don't believe that that is correct. And then, again, not only is there no evidence to show that it is a firearm, but in this unusual situation we have evidence that it is not a firearm, evidence that was presented by the government at trial and essentially conceded by them at sentencing. And so now the government is arguing that you could affirm based on evidence supported by the record, but here the government essentially abandoned that argument at sentencing by saying we're not relying on that. So I don't think it's fair for them to come back at this late stage and say, well, you can affirm on that basis after we told you, yeah, that's not what we're using here. Thank you, Your Honor. Okay. Thank you very much. The case just argued is submitted.
judges: GRABER, WATFORD, Bataillon